# EXHIBIT A

ORIGINAL

MIN ▉
Loan ID # ▉

# ADJUSTABLE RATE NOTE
(LIBOR Six-Month Index (As Posted By Fannie Mae) – Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

April 30th, 2004                     CHERRY HILL, NJ
[Date]                               [City]                     [State]

133 WILLOWBROOK ROAD, TWP. OF CHERRY HILL, NEW JERSEY 08034-
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $172,900.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **AMERICAN RESIDENTIAL MORTGAGE**. I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.275 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on June 1st, 2004. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on May 1st, 2034, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 136 GAITHER DRIVE, MOUNT LAUREL, NJ 08054 or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $1,301.98. This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of May, 2007, and on that day every Six month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market based on quotations of major banks, as posted by Fannie Mae through electronic transmission or by telephone or both through electronic

MULTISTATE ADJUSTABLE RATE NOTE–LIBOR SIX-MONTH INDEX (AS POSTED BY FANNIE MAE)–    Form 3518 1/01
Single Family–Fannie Mae Uniform Instrument                                          (page 1 of 4 pages)
                                                                     www.MortgageBankingSystems.com

Loan ID # ▮▮▮▮▮▮

transmission and by telephone. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, or is no longer posted either through electronic transmission or by telephone, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Eight and Two Hundred Seventy Five one-tho** percentage points ( **8.275** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **11.275** % or less than **8.275** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) ( **1.000** %) from the rate of interest I have been paying for the preceding **Six** months. My interest rate will never be greater than **14.275** %. **My interest rate will never be less than 8.275%.**

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the telephone number of a person who will answer any question I may have regarding the notice.

5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX (AS POSTED BY FANNIE MAE)--
Single Family--Fannie Mae Uniform Instrument
▮▮▮▮▮

Form 3518 1/01
(page 2 of 4 pages)
www.MortgageBankingSystems.com

Loan ID # ▓▓▓▓▓▓

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX (AS POSTED BY FANNIE MAE)-- Form 3518 1/01
Single Family--Fannie Mae Uniform Instrument (page 3 of 4 pages)
www.MortgageBankingSystems.com

Loan ID ▊▊▊▊

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
JASON MARTINEZ                -Borrower

_____(Seal)
                              -Borrower

_____(Seal)
                              -Borrower

_____(Seal)
                              -Borrower

_____(Seal)
                              -Borrower

_____(Seal)
                              -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF   Countrywide Document Custody Services,
WITHOUT RECOURSE TO:  a Division of Treasury Bank, N.A.

AMERICAN RESIDENTIAL MORTGAGE BY
AMERICAN MORTGAGE EXPRESS CORP.,
A PENNSYLVANIA CORPORATION, DOING BUSINESS AS
AMERICAN RESIDENTIAL MORTGAGE

VICKI SANCHEZ - ASST. VICE PRESIDENT

PAY TO THE ORDER OF
COUNTRYWIDE HOME LOANS INC.
WITHOUT RECOURSE
COUNTRYWIDE DOCUMENT CUSTODY SERVICES,
A DIVISION OF TREASURY BANK, N.A.
BY_____
LAURIE MEDER
VICE PRESIDENT

PAY TO THE ORDER OF
_____
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.
BY_____
Managing Director

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX (AS POSTED BY FANNIE MAE)--
Single Family--Fannie Mae Uniform Instrument

Form 3518 1/01
*(page 4 of 4 pages)*
www.MortgageBankingSystems.com

After Recording Return To:
Bayview Loan Servicing, LLC
Attn: Collateral Department
4425 Ponce de Leon Blvd.
Coral Gables, FL 33146

This Document Prepared By:
ELIZANDRA GONZALEZ
Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd.
Coral Gables, FL 33146
833-656-7472 Ext. 2162

_____ [Space Above This Line For Recording Data] _____

Original Loan Amount: $172,900.00
New Money: $264,581.96

Loan No.:
Investor Loan No:
MIN Number:

# LOAN ADJUSTMENT AGREEMENT

### NOTICE: BALLOON AMORTIZATION MODIFICATION

### Date: September 16, 2019

This loan adjustment agreement is made and entered into as of September 16, 2019 (the "Effective Date"), by and between, Bayview Loan Servicing, LLC, whose address is 4425 Ponce de Leon Blvd., Coral Gables, FL 33146, ("Servicer") and JASON MARTINEZ ("Borrower"). Prior instrument reference: Book/Liber N/A, Page N/A, Instrument No: N/A, of the Official Records of County, NJ.

Property Address ("Property"):    133 WILLOWBROOK RD
                                   TWP OF CHERRY HILL, NJ 08034

Tax Parcel No.:

### RECITALS

A. Servicer is the holder or servicing agent of the holder of that certain Promissory Note ("Note") dated April 30, 2004, executed by Borrower or Borrower's predecessor-in-interest in the original principal sum of $172,900.00.

B. The note evidences a loan ("Loan") to Borrower or Borrower's predecessor-in-interest on April 30,

2004, in the original principal sum of $172,900.00 along with a Deed of Trust or Mortgage ("Security Instrument") securing said Note. The Security Instrument creates a secured lien on certain real property ("Property") owned by Borrower (and is more specifically described in the Security Instrument). The Note and Security Instrument and all other loan documents related to the Loan are hereinafter collectively referred to as the "Loan Documents".

C. Due to adverse economic circumstances, Borrower has requested Servicer to adjust the scheduled amortization of the Note to permit Borrower to meet Borrower's obligations to Servicer in full and in a timely manner. The requested adjustment will benefit Borrower, Servicer and any junior lien holder, by avoiding the possible foreclosure of the Loan by Servicer. Accordingly, it is considered to be in the best interest of all concerned to enter this Loan Adjustment Agreement ("Agreement").

D. Borrower hereby agrees to complete all terms of the Stipulation Agreement, dated 09/16/2019, including addressing and clearing any outstanding title issues to Servicer's satisfaction. In addition, Borrower agrees that failure to clear title issues may prevent the modification from being made permanent even if all trial payments are made. Upon successful completion of the above, Servicer will execute the Agreement and adjust the loan accordingly. Recording of this Agreement is in Servicer's discretion.

## AGREEMENT

NOW, THEREFORE, Borrower and Servicer hereby agree as follows:

1. **NOTE MODIFICATIONS:**
    (a) **Outstanding Debt:**
    Borrower agrees that the unpaid principal balance due on the Note of $167,098.20, shall be increased by $264,581.96 the amount of the unpaid installments, interest, late charges, fees and costs, and, if applicable, any advances for unpaid property taxes and/or insurance premiums ("Unpaid Sums Due"), for a total unpaid principal balance due of $431,680.16 ("New Balance"). Based on the consideration listed above, and other good and valuable consideration, Servicer agrees to defer and waive interest upon $216,523.24 of the New Balance until the loan matures on 11/01/2040 at which time the Deferred Balance shall be immediately due and payable as a balloon payment, as well as any outstanding amounts due under the terms of the mortgage. In the event that the Deferred Balance is not paid timely as agreed or in the event of a default under this agreement or the loan documents, interest shall accrue on the Deferred Balance at the rate in effect on the loan immediately prior to maturity or the time of default, and will adjust thereafter according to the terms of the Note. Borrower agrees to the accuracy of the allegations contained in the above Recitals as well as to the authenticity and validity of each document referred to herein and to the validity of the unpaid sums due and the New Balance. Interest and payments will accrue on the New Balance at the interest rates, whether adjustable, variable or fixed, provided in the Note, unless modified by this Agreement.

(b) New Monthly Payments, Payment Adjustments:

$137,791.85 of the Interest Bearing Principal Balance shall be an interest bearing balloon (the "Balloon payment") and I will pay interest on this amount in my monthly modified payment. My Payment schedule for the Modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Prin & Int Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | July 01, 2019 | $651.83 | $646.59 May adjust periodically | $1,298.42 May adjust periodically | August 01, 2019 | 60 |
| 6 | 3.000% | July 01, 2024 | $757.28 | May adjust periodically | May adjust periodically | August 01, 2024 | 12 |
| 7-22 | 4.000% | July 01, 2025 | $868.58 | May adjust periodically | May adjust periodically | August 01, 2025 | 184 |
| Balloon | 4.000% | N/A | $137,791.85 which is an estimated amount. | N/A | N/A | November 01, 2040 | 1 |

(c) New Maturity Date:
The maturity date will be **November 1, 2040**, on which date any unpaid interest and all other sums due shall be paid in full.

2. ESTABLISHMENT OF IMPOUND/ESCROW ACCOUNT:
Borrower acknowledges that Servicer will establish an impound/escrow account for the collection of property taxes and insurance premiums if such account is not currently in existence. Servicer will analyze the impound/escrow account from time to time. As a result of this analysis, the escrow portion of Borrower's monthly payment may change. Borrower further acknowledges that the escrow portion of his/her monthly payment may be substantially higher than the estimate. (Note: In certain states, impound/escrow accounts do not collect for payment of taxes pertaining to Bond/Special Assessments and Irrigation/Water District).

3. MORTGAGE INSURANCE:
Borrower agrees that the mortgage insurance premiums on the Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of this Agreement.

4. AGREEMENT NOT TO ENCUMBER:
Borrower agrees that it will not voluntarily or involuntarily: (i) grant any interest in or option with respect to, any of the Property; or (ii) create or permit to exist any lien, security interest, or other charge or encumbrance upon or with respect to any of the Property, except for Servicer's already existing security

interest and lien, or sell the Property for the benefit of itself or any party or in any manner other than that contemplated by this Agreement

### 5. ASSIGNMENT OF LEASES AND RENTS AND RECEIVERSHIP

The existing Mortgage and Note shall be amended to include the following: In the event the loan is in default and Borrowers are generating any gross income from the property by virtue of a tenancy or any other arrangement, Borrowers agree to assign and transfer to Servicer the right title and interest of Borrower in all existing and future leases and agreements whether or not in writing, and any rents and deposits derived and collected therefrom, affecting and pertaining to the use enjoyment or occupancy of any part of the premises. Borrower consents to the entry by Servicer, Servicer's agent, or court appointed receiver or designee, to enter the premises to collect the rents and enforce the leases. Borrower further consents to the appointment of a court appointed Receiver in the event the loan is in default.

### 6. NO OTHER CHANGES:

Except as expressly adjusted by this Agreement, all of the covenants, agreements, stipulations, and conditions in the Note and the Security Instrument remain unmodified and in full force and effect. The Security Instrument continues to secure on a first and prior lien basis the due and punctual payments of the Note, as modified by this Agreement. None of Borrower's obligations or liabilities under the Security Instrument shall be diminished or released by any provisions herein. Nor shall this Agreement in any way impair, diminish, or affect any of the Borrower's rights or remedies in the Security Instrument whether such rights or remedies arise herein or by operation of law. Any inserted terms, changes or additions to this Agreement will immediately render it null and void. Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, but by signing the below Borrower has voluntarily signed this Agreement.

### 7. NO RELIANCE; CONSTRUCTION:

Each of the parties hereto hereby declares that, prior to the execution of this Agreement, they have apprized themselves of sufficient relevant data in order that they might intelligently exercise their own judgments in deciding on the contents of this Agreement and whether to execute this Agreement. Borrower declares that his/her decision to execute this Agreement is not as a result of undue influence or duress, and not predicated on or influenced by any declarations or representations not set forth in this Agreement, by Servicer, or any other person or party or any predecessors in interest, its successors, assigns, officers, directors, employees, agents or attorneys. Each of the parties hereto hereby further acknowledges and agrees that each of them has had significant input in the development of this Agreement and this Agreement shall not therefore be construed.

### 8. NO ORAL MODIFICATION:

This Agreement may not be amended or modified in any way except by a written instrument executed by all of the parties hereto.

This Agreement does not reaffirm any pre-existing debt to the extent it was previously discharged in a bankruptcy proceeding.

Counterparts:
This Agreement may be executed by the Parties in any number of counterparts, including by way of facsimile, and each of which shall be deemed to be an original and all of which, collectively, shall be deemed to be one and the same instrument.

IN WITNESS WHEREOF, Servicer and Borrower have executed this Loan Adjustment Agreement.

_____     Date: 11/5/2019
JASON MARTINEZ - Borrower

_____ [Space Below This Line For Acknowledgments] _____

State of New Jersey
County of CAMDEN     SS:

I certify that on this 5 day of NOVEMBER, 20 19, JASON MARTINEZ, personally came before me, a Notary Public and acknowledged under oath, to my satisfaction, the he (she) is named in and personally signed this document; and delivered this document as his (her) act and deed.

_____
NOTARY PUBLIC

My commission expires: 01·02·2023

CHRISTOPHER INGLETON
NOTARY PUBLIC OF NEW JERSEY
ID # 2428437
My Commission Expires 01/02/2023

Bayview Loan Servicing, LLC

By: _____(Seal) - Servicer
Name: _____
Title: _____

_____
Date of Servicer's Signature
_____ [Space Below This Line For Acknowledgments] _____

State of _____
                                                    SS:
County of _____

I CERTIFY that on _____
_____

Personally came before me and stated to my satisfaction that this person (or if more than one, each person):

(a) was the maker of the attached instrument;
(b) was authorized to and did execute this instrument as _____

of _____ the entity named in this instrument; and
(c) executed this instrument as the act of the entity named in this instrument.

                                                    _____
                                                    (Print name and title below signature)

ELIZANDRA GONZALEZ, Asset Manager
Bayview Loan Servicing, LLC
Phone Number: 833-656-7472 Ext. 2162  Monday – Friday 9:00 a.m. – 6:00 p.m., ET
Fax Number: 3052652540

### 9. SUCCESSORS AND ASSIGNS:

This Agreement shall be binding upon and inure to the benefit of the signatories to this Agreement and each of their respective successors and assigns. The obligations of the signatories to this Agreement shall not be delegated or assigned.

### 10. ATTORNEY'S FEES:

In the event that any party hereto brings suit for the collection of any damages resulting from, or the injunction of any action constituting, a breach of any terms or provisions of this Agreement, then the prevailing party shall be entitled to recover all reasonable court costs and attorney's fees, at all levels.

Borrower and Servicer agree that if there is a pending foreclosure action that results in a voluntary dismissal as a result of a modification or a similar settlement between Borrower and Servicer then Borrower and Servicer will each pay for their respective attorney fees and costs and neither party will be responsible for the other parties attorneys fees and costs.

### 11. PARTIAL INVALIDITY:

If any term, covenant or condition of this Agreement or its application to any person or circumstances shall be held to be illegal, invalid or unenforceable, the remainder of this Agreement or the application of such term or provisions to other persons or circumstances shall not be affected, and each term hereof shall be legal, valid and enforceable to the fullest extent permitted by law, unless an essential purpose of this Agreement would be defeated by the loss of the illegal, unenforceable, or invalid provision. In the event of such partial invalidity, the parties shall seek in good faith to agree on replacing any such legally invalid provisions with valid provisions which, in effect, will, from an economic viewpoint, most nearly and fairly approach the effect of the invalid provision and the intent of the parties in entering into this Agreement.

MY LOAN, AS AMENDED BY THIS AGREEMENT, IS PAYABLE IN FULL AT MATURITY. I MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. UNLESS REQUIRED BY APPLICABLE LAW, THE SERVICER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. THEREFORE, UNLESS OTHERWISE REQUIRED BY LAW, I WILL BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT I MAY OWN, OR I WILL HAVE TO FIND A SERVICER, WHICH MAY BE THE SERVICER I HAVE THIS LOAN WITH, WILLING TO LEND ME THE MONEY. IF I REFINANCE THIS LOAN AT MATURITY, I MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF I OBTAIN REFINANCING FROM THE SAME SERVICER.

Disclaimers and Notices

Bayview Loan Servicing, LLC

By: _____ (Seal) - Servicer
Name: _____Rafael Alvarez_____
Title: _____Vice President_____

__11.12.19__
Date of Servicer's Signature

_____[Space Below This Line For Acknowledgments]_____

State of __Florida__

County of __Miami Dade__           SS:

I CERTIFY that on __11-12-19__

**Rafael Alvarez**

Personally came before me and stated to my satisfaction that this person (or if more than one, each person):

(a) was the maker of the attached instrument;
(b) was authorized to and did execute this instrument as ____VP____

of __Bayview Loan Servicing, LLC__ the entity named in this instrument; and
(c) executed this instrument as the act of the entity named in this instrument.



(Print name and title below signature)
Yadira Fonseca - notary

ELIZANDRA GONZALEZ, Asset Manager
Bayview Loan Servicing, LLC
Phone Number: 833-656-7472 Ext. 2162  Monday – Friday 9:00 a.m. – 6:00 p.m., ET
Fax Number: 3052652540

**Yadira Fonseca**
Comm. # GG342667
Expires: June 6, 2023
Bonded Thru Aaron Notary

---

Mortgage Electronic Registration Systems, Inc - Nominee for Lender

Title: _____

_____[Space Below This Line For Acknowledgments]_____

State of _____
                                    :SS:
County of _____

I CERTIFY that on _____

---

Personally came before me and stated to my satisfaction that this person (or if more than one, each person):

(a) was the maker of the attached instrument;
(b) was authorized to and did execute this instrument as _____

of _____ the entity named in this instrument; and
(c) executed this instrument as the act of the entity named in this instrument.

_____
(Print name and title below signature)

## ERRORS AND OMISSIONS/COMPLIANCE AGREEMENT

Loan Number: ███                                                                 Date: September 20, 2019

Borrower(s):   JASON MARTINEZ

Property Address:   133 WILLOWBROOK RD, TWP OF CHERRY HILL, NJ 08034

Servicer: Bayview Loan Servicing, LLC

In consideration of Bayview Loan Servicing, LLC (the "Servicer") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Servicer, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Servicer, to enable Servicer to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs, or any municipal bonding authority.

The Borrower agrees to comply with all such requests made by the Servicer within 30 days of receipt of written request from the Servicer. Borrower agrees to assume all costs that may be incurred by the Servicer, including without limitation, actual expenses, legal fees and marketing losses. Borrower's failure to comply with all such requests within such 30 day time period will result in the Servicer adjusting the modified terms without the borrower's consent.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Servicer.

_____                                    Date: 11/5/2019
JASON MARTINEZ -Borrower

FULFILLMENT

NOV 1 1 2019

After Recording Return To:
Bayview Loan Servicing, LLC
Attn: Collateral Department
4425 Ponce de Leon Blvd.
Coral Gables, FL 33146

This Document Prepared By:
ELIZANDRA GONZALEZ
Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd.
Coral Gables, FL 33146
833-656-7472 Ext. 2162

_____ [Space Above This Line For Recording Data] _____

Original Loan Amount: $172,900.00                                                Loan No.:
New Money: $264,581.96                                                     Investor Loan No:
                                                                              MIN Number:

# LOAN ADJUSTMENT AGREEMENT

### NOTICE: BALLOON AMORTIZATION MODIFICATION

### Date: September 16, 2019

This loan adjustment agreement is made and entered into as of September 16, 2019 (the "Effective Date"), by and between, Bayview Loan Servicing, LLC , whose address is 4425 Ponce de Leon Blvd., Coral Gables, FL 33146, ("Servicer") and JASON MARTINEZ ("Borrower"). Prior instrument reference: Book/Liber N/A, Page N/A, Instrument No: N/A, of the Official Records of County, NJ.

Property Address ("Property"):  133 WILLOWBROOK RD
                                TWP OF CHERRY HILL, NJ 08034

Tax Parcel No.: 00431.0011 00018.0000

### RECITALS

A. Servicer is the holder or servicing agent of the holder of that certain Promissory Note ("Note") dated April 30, 2004, executed by Borrower or Borrower's predecessor-in-interest in the original principal sum of $172,900.00.

B. The note evidences a loan ("Loan") to Borrower or Borrower's predecessor-in-interest on April 30,

**BAYVIEW** | Bayview Loan Servicing, LLC
LOAN SERVICING | 4425 Ponce de Leon Blvd., 5th Floor
| Coral Gables, FL 33146

September 20, 2019

**JASON MARTINEZ**
**1155 RT 73**
**MOUNT LAUREL, NJ 08054**

Loan Number: ███    Property Address: 133 WILLOWBROOK RD
                                      TWP OF CHERRY HILL, NJ 08034

Dear Customer:

Our records indicate that you have successfully completed your trial modification period. However, during the conversion period since then we have not received certain payments. As we recognize that your trial period was completed, as part of the modification process we will take the amounts of any missed payments during the conversion period and add them to the modified loan as additional deferment. The total amount of missed payments which will be deferred is $1,298.42. This deferment amount will be added to your initial deferment amount of $215,424.82 for a total deferment amount of 216,723.24.

This process is intended to complete the modification as of the date it was originally intended to complete, therefore the documents will reflect the original dates, including the original due date. However, the additional deferment of the missed payments combined with any actual payments made after the completion of the trial period will be used to advance the due date to bring the loan current. Any payments made after the trial period will be applied to the loan and will be reflected in future statements. Your next monthly payment will be due 10/01/2019.

Bayview Loan Servicing, LLC will take the necessary steps to correct any credit reporting since the Modification Effective Date of 08/01/2019 to reflect trial payments and any payments you make between the time your trial period ended and the time the conversion is complete.

Sincerely,

Elizandra Gonzalez: Asset Manager



Bayview Loan Servicing, LLC is a debt collector. This letter is an attempt to collect a debt and any information obtained will be used for that purpose. To the extent that your obligation has been discharged or is subject to an automatic stay of bankruptcy this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect such obligation.

The following mailing address must be used for all Error Notices & Information Requests: Bayview Loan Servicing, LLC, Customer Support, 4425 Ponce de Leon Boulevard, 5th Floor, Coral Gables, FL 33146.